Mr. Marshall, please call the next case. Your Honor, this case will be docket 2-15-9142. The people's dispute is a one-person affidavit. The amendment can be presented to the defendant. I hereby order the defendant to present the defendant, Mr. Christopher McCoy. I hereby order the defendant to present the defendant, Mr. Lawrence R. Thompson. Thank you. Mr. McCoy, on behalf of the defendant, you may proceed. May it please the court. Counsel, my name is Christopher McCoy from the Office of the State Appellate Defender, and I represent Ms. Nina Robledo. My argument today is fairly straightforward. Ms. Robledo was convicted of driving with a blood alcohol concentration of .08 or more based on a breathalyzer result of .082. This machine had a margin of error of .005, so her actual BAC could have been as low as .077. Can I ask you a threshold question? Yes. Did anyone object to the admissibility of the breathalyzer result? No. We're not contesting its admissibility. We're contesting the sufficiency of the evidence. Well, so if it comes into evidence and it's unobjected to, then doesn't that become the reliability and the efficacy of the result become a matter for the trier of fact once it's in evidence? Yes, but we're contesting that there was a rational verdict for the jury to find beyond a reasonable doubt that her BAC was above .08 in this case. Go ahead. Was this argument about the tolerance, the accuracy of the test, was it argued before the jury? Yes, it was, and again, that is the fact that the jury heard this evidence doesn't insulate this case from appellate review. No, it certainly doesn't. That's why we're here. But can't we resolve this appeal on the basis of established Illinois law to the effect that challenges to the accuracy of scientific process are presented to the jury? I mean, that's what was argued here to the jury. Why do we have to look to cases in foreign jurisdictions? Well, in terms of a breathalyzer test, this is an issue of first impression, but it's really a matter of... It's no different, excuse me. It's no different than DNA. It's no different than... Radar? Thank you. Speed and radar, exactly. How is it different? Well, I think it's important to conceptualize this case as the fact that, yes, the breathalyzer machine was admissible. Yes, it was presented to the jury. But what does it actually tell us? Well, it displays one number, in this case, the .082. But what it really tells us, because of this margin of error, which both parties agree on as .005, what the machine really tells us is not one number, but a range of possible actual blood alcohol levels from .077 to .087. And it's just pure speculation for the jury to pick a number somewhere in that range. There is no evidentiary basis for them to decide that this was within the range above .08 or below .08, because the range contains both numbers above the legal limit and below the legal limit. But we do know that the machine was accurate, and we do know on the date that it was used. We had the test before and after within the applicable range. We had the administrative regulations that were all complied with. So, again, since we know that, I come back to the question I asked before, then why isn't this a question of weight? It's not speculation. It's how much weight the jury wants to give to that evidence. Well, first, to answer the general question and then to go into two specific examples, the general question is, there is no evidentiary basis for the jury to decide, and I'll get into your examples in a minute, of what, again, where this falls within the range of the possible outcomes. So first- Excuse me, I'm not following. Stop right there for a minute. Sure. Explain what you mean by that. Well, please, again, we have .077 to .087. As the state has not contested, some of that is below .08. So the jury has to find beyond reasonable doubt that within this possible range that it's above .08. There's no evidentiary basis to do so. In terms of the administrative regulations, that's all about admissibility, and that doesn't change the fact that this machine had a margin of error of .005. The officer, Bond, could have been the most well-trained officer in history. He could have done everything perfectly by the book, and the result could still be .005 too high. Let's carry that out to a scientific extension. If we were to accede to the accuracy of your position, then we would be announcing a rule, would we not, that in all cases the prosecution must prove that the test results exceed 0.08 by the margin of error recognized in the process, correct? We'd be engrafting that into the statute, wouldn't we, if we make that holding? What the statute says, though, is in terms of the state must prove the defendant's actual blood alcohol level beyond a reasonable doubt, that that is actually above .08. So this is not changing the statute. This is asking that the state be held to its constitutionally mandated burden of proof in this case. But then 501.2 allows as evidence of the actual blood alcohol the results of the breathalyzer. 501.2A says upon the trial, evidence of the concentration of alcohol in the person's blood or breath at the time alleged, as determined by analysis of the person's blood, urine, breath, or other bodily substance shall be admissible. If we take your position, we'd be writing that out of the statute. We'd be writing that out. I disagree. That is about admissibility. We are not contesting that this evidence is admissible. Is that evidence sufficient to prove the defendant guilty beyond a reasonable doubt? That's not a legislative determination. That is a judicial determination. But is this the case to rule on? I keep coming back to the fact, if you thought that there was a fundamental foundational problem with the admissibility of this evidence, it would seem to me that if you're thinking the test is not accurate the way it's performed, there'd have to be a threshold objection to its admissibility. What about the argument you waived in here? Reasonable doubt arguments cannot be waived. And this argument was made before the jury and made in the post-trial motion as well. So I don't think this is a reasonable waiver. So what was the reason it was not objected to? The court could have excluded it as being unreliable or a fraud threat. Under the statute, it's admissible. That's fine. But when you're dealing with this borderline case, it can be admissible but not sufficient to prove the case beyond a reasonable doubt. And, again, that goes back to what is the statute prohibiting? Is the statute ‑‑ and I think if you look at the Haynes case, which we cite in our brief from Alaska, there's a difference in states between whether a statute prohibits a test reading in excess of the statutory limit or upon an actual level of alcohol in excess of that limit. Here, Illinois has prohibited the actual level of alcohol. So the state doesn't just have to prove we have an admissible test result that's over 0.08. They have to prove Ms. Robito's blood alcohol level was over 0.08. Isn't there a conflict between the requirements of your saying beyond a reasonable doubt and the promulgation of the administrative regulations? Maybe you should be addressing this to the legislature that should be saying that the 0.08 has to take into consideration the margin of error. Again, I disagree. I think that is how the legislature is currently written. If the state's position would actually be what would require the legislature to change the statute to something like what the Rucker case held with the Delaware statute, which that statute says as shown by chemical analysis of the blood, breath, or urine. That's not what Illinois says. So as it's currently written, we are prohibiting the actual blood alcohol level over 0.08. So again, I come back to the fact that there is a range in this case. That range contains possibilities under 0.08. Nothing the state showed at trial can defeat that problem. Maybe in some future case they could come up with some data of how often the machine is errors within the margin of error. That's not presented here. So what you're saying is an inherent problem with the procedures of the state courts, correct? No. Because if it doesn't allow for this margin of error, then what is your argument then? Why isn't it valid then in all cases? I guess I'm not understanding your question. Why isn't that valid then? The regulations don't say anything about a margin of error, do they? The regulations, part of them do. This is within the acceptable margin of error of the regulations. But again, that's about a disability. The regulations cannot say what is sufficient to prove the defendant guilty beyond a reasonable doubt. That would be a separation of powers violation. So what we are left with here is did this evidence prove the defendant guilty beyond a reasonable doubt? Wait, why do you have a separation of powers issue? Illinois has amended the DUI statute. It may change the levels of presumption. If you summon here a beyond a reasonable doubt level, you have to be a 08 or a 10. I mean, it varies from state to state. I guess what I'm saying is if the Illinois state police regulations say if these conditions are met, the breathalyzer is admissible. Yes. If they do not say if these conditions are met, then a reading above .08, no matter how close it is, if it's within the margin of error, is sufficient to prove the defendant guilty beyond a reasonable doubt. They couldn't do that. Right. So that's the separation of powers angle that I'm suggesting. But it's for the jury to decide if it's beyond a reasonable doubt. The standard isn't beyond all doubt. And I think that's, to me, I'm hearing you say that it has to be beyond all doubt. If that margin of error has to be taken into account. No. Again, I disagree. Yes, yes, the standard is not beyond all doubt. But this is not beyond all doubt when we have 11 possibilities from .077 to .087. Three of those 11, the defendant's not guilty. So basically, you've got a one in four chance of a wrongful conviction. That's not asking for proof beyond all doubt. And I think it's also important to understand that there's, even though the margin of error is .005, that doesn't mean that 99.5% of the time this machine is accurate. What that means is that there is, again, this range. And in this case, given the particular reading of this breathalyzer and its margin of error, it does not eliminate a reasonable doubt that she was under .08. So, yes, the jury has this evidence. The jury heard this evidence. But they needed facts. They needed evidence upon which to find beyond a reasonable doubt that, in fact, the BAC was above .08. Well, the BAC was presented to them, and they also, as I understand it, the jury heard and was argued to the jury that the breathalyzer result was subject to this margin of error. So the jury was aware of that. They were aware of that, but it still doesn't mean that their verdict is rational or that their verdict that they could eliminate all possibilities. Well, they had other evidence. The officer testified that her eyes, once he saw her, her eyes were bloodshot and droopy. He noticed a smell of an alcoholic beverage. The breathalyzer wasn't the only evidence that they had. It was the biggest, but why couldn't they take the other evidence that they received of his observations and take the breathalyzer and come to the conclusion beyond a reasonable doubt? Well, it's important to remember the jury found Ms. Robledo not guilty of being under the influence of alcohol. So it would seem that all this evidence would actually sway the other way to say that she was under .08. Right. They found her not guilty under A2 and guilty of A1. But, you know, if there had been an error in the accuracy test, though, you were talking about that a minute ago, the machine would not have recorded the .079 each time that it did. So it was calibrated to read .079 and it read .079 on the two occasions it was tested within the requisite period of time. It did, but there's two problems with that evidence. First, there's a measurement problem, and second, there's a sample size problem. And what I mean by a measurement problem is to say that from those two tests that Ms. Robledo's test was accurate, you would have to say that those two tests themselves were accurate, which is premised on the fact that this predetermined canister is actually .079. Yet the record doesn't speak to anything of how this was measured. In the first instance, we don't know if the graphalyzer machine itself is what's measuring it, which in that case you're dealing with the same margin of error. And it's really just circular reasoning to say, oh, well, this must have been .079 because it read .079. And if it was something outside of the machine that, again, measured these predetermined canisters in the first instance, then we don't know what that was. We don't know what its margin of error was. And it stands to reason that its margin of error would not be less than .005, or whatever that method or technology used for measuring BAC would be implemented into the graphalyzer machine itself to make a more accurate breath test. So it's still good. Since I know how this works in the real world, every test, every, you know, designated level of intoxication as a matter of law makes you guilty of DUI. You have a built-in margin of error, apparently, in all of these tests. What is the standard going to be? How do you prove, if there's a margin of error at every possible test, how do you prove what the level was? You have to prove it outside the .005. If our BAC was .085, we have no argument here. When it's within the margin of error, and there's nothing else presented by the State to show where it would fall within that margin of error, then, again, it's just speculation. And you believe this should be a judicially declared doctrine, not a rewrite of the administrative regulations. It's not a rewrite of the administrative regulations. It's looking at the evidence presented and determining if the jury reached a reasonable verdict in this case. If they had evidence upon which to find the defendant guilty beyond a reasonable doubt. I know my time has expired. If I just may continue. The second problem with the certification checks was sample size. Again, we only have two prior tests. So if, well, a prior test and a subsequent test. Even if we assume that those tests are 100% accurate, that doesn't mean that every test this machine administered was 100% accurate. That's just, again, too small the sample size to make this conclusion. Well, you're arguing, again, with the regulations and what the regulations allow. They allow that into evidence. And, again, the jury can weigh that. So you're saying that shouldn't be allowed because the sample size is too small. And so, therefore, how would we, what's the right sample size? I mean, what should the regulations say? How many times should it be tested? I guess just to go to a broader level on your question, the first is off. This Court doesn't need to determine exactly how many samples need to be tested. Two in this case is simply insufficient. But the basic is regulations control admissibility. This could go before the jury, and the jury could hear this evidence. They still have a responsibility to make a rational, reasonable determination on the verdict. That is what this Court's review is about, to determine that whether or not a reasonable fact finder could have found the defendant guilty beyond a reasonable doubt. And the fact is, yes, it comes in as admissibility. But when it is within this margin of error, it cannot be said beyond a reasonable doubt that it is one of these eight of the 11 possibilities, 0.08 or greater, rather than the three of the 11 possibilities that are under 0.08. And, in fact, you know, when you look at the margin of error, the machine's manual didn't say that the margin of error was 0.005 unless you get two perfectly accurate certification checks. The margin of error doesn't change. There's nothing Officer Bond could have done. There's nothing any, no matter how well-trained the police officer is, could do to make this test any more accurate than 0.005. So there is no basis for the jury to find, to, I mean, they're just basically guessing within this range. But so then what you're saying is the only way someone can be found under the influence of alcohol based upon BAC is if their blood alcohol is 0.087, nothing below it. And, therefore, if that's the case, we are rewriting that statute. No. Well, it would be 0.085. 0.085, okay. But we're not rewriting the statute because if the statute was like Delaware and like we find in Rucker, then, yes, that would be correct. We'd be rewriting the statute because, in that case, the statute would be based on what does the test reading say. That's not what we have in Illinois. In Illinois, we have a statute based on actual blood alcohol level. So what we are asking is not to rewrite the statute. We are asking to find less in it, the defendant's blood alcohol, for the state to prove beyond a reasonable doubt that the defendant's blood alcohol level was above 0.08. That's not rewriting the statute. We don't have the word actual in this statute. The alcohol concentration in the person's blood, other bodily substance, or breath is 0.008 or more based upon the definition of blood and breath units in Section 11-502.2. Where is that word actual? Well, this, I think, is where the rule of lenity comes in as well. Because it's not, when you look at the other statutes, they are, if I just take one moment, if you look at the Haynes case again, that really distinguishes between cases where you have a test reading in excess of the statutory limit or the actual level of alcohol. And here, if we look at Rucker, what does Rucker say? Rucker, that statute says as shown by chemical analysis. We don't have that phrase here. So it's not a phraseology based on what the test result itself isn't good enough. And so that, there needs to be something else if you're within the margin of error. And there's just nothing in this case. Well, on that topic, how do you distinguish this case from the Barbic case out of the Second District? That was a case where the evidence showed that the radar device had a margin of error. Defendant was arrested for speeding. Trial court found the defendant guilty. On appeal, the defendant argued the State failed to prove him guilty beyond a reasonable doubt because the radar unit was subject to error. This Court affirmed knowing that the radar device tested accurately both before and after the defendant's arrest. This Court noted that both the radar device and the tachometer were subject to error. Subject to error, but it was the function of the trier of fact to determine the weight to be afforded to the testimony. So how is that distinguishable from here? Margin of error there, margin of error here. Court said it was up to the jury to determine the weight. I haven't read that case, so I can't specifically speak to the facts of it. But again, in terms of the notion that it's the jury's role to determine weight, yes, that's true. But there must be something to determine that weight on. It can't just be a blind guess in the dark. A jury can make a rational, reasonable inference from the evidence. They can't make an unreasonable inference, and they can't make an inference absent any evidence. And that's our position here, that really determining where it is in that range is an inference without any evidentiary basis. All right. Thank you very much. You'll have an opportunity to rest before we move on. Mr. Ellison, on behalf of the appellate. Good morning. May it please the Court, Your Honor. My name is Lawrence Wallenzer, and I represent the village of Montmoyne and the people of the state of Illinois in this matter. I was also a trial attorney as well. As has been pointed out by the panel here, the evidence of the breath result in this case did come in unobjective. And I think the Court can decide this case on the facts of this case and the determination that the jury made in reviewing the evidence and not to make any broad sweeping changes in case law to the statute. The position of the appellant does exactly that, or at least their argument. They're asking that we have to prove as the prosecution not only .08 or more, but .01 plus the margin of error or any tolerance, which can vary from instrument to instrument depending on which use. The General Assembly, I think, recognized this when they adopted the statute, as the other cases talked about as well, that I think we all agree that no instrument is perfect, no instrument is accurate 100% of the time. But we're willing to put up with certain acceptable tolerances and variances. And when the statute was passed, they delegated to the Illinois State Police the authority to set up procedures, certifications, and testing for the admissibility of these test results, the type of machines that have to be approved by the State Police, the testing that has to be done, the qualifications of breath test operators, the frequency of testing, and so forth. And that's what the burden of the prosecution is made delicate. We have to show that those statutes and those regulations have been complied with. Well, counsel, isn't it our function to review whether any rational trier fact could have found the defendant guilty beyond a reasonable doubt? Absolutely. And so how do you respond to counsel's argument that there wasn't sufficient evidence here because of the number of options that the jury had with respect to if this margin of error is taken into account? Well, again, they don't have to remove all doubt or any doubt, but is there a reasonable doubt? And could a rational jury, when they heard this evidence and the circumstances under which the test was conducted, could they conclude that the defendant was guilty of having a BAC of .08 or more? And what was different in this case and all the cases cited by the appellants was the certification of the machine. Those other cases which were cited by the appellant in their brief talked about, in general terms, there are margins of errors, margins of tolerance. But the officer testified and acknowledged in the manual for this instrument that it had a margin of error of tolerance of .005. But what the evidence was is that the officer was a certified officer. He followed the administrative rules as set forth by the state police, which were admitted in the evidence. In fact, when you review the record, all of this evidence came in unobjected. And when the officer testified that when he administers a test, he has this instrument, this ECIR-2, does a self-certification basically once a month. It had done a test on September 2nd of 2014 on a known quantity of a gas at .079. And when it did two tests, which the regs require, they say you have to do two tests on a certification once a month. And it came back at .079 on September 2nd, 2014. Now, when the defendant's test was given, the next test that was given on October 1st, 2014, and sequentially it was the very next test on this instrument, again, with a known quantity of .079, it registered two certification tests of .079. Well, are those two samples that were taken before and afterwards sufficient to substantiate the accuracy of the test results on the date in question? Counsel argues no. Well, correct. But there was no evidence that those tests were not accurate. And those tests were required by the state police regulations. And I think we have to presume that the General Assembly and the state police have allowed for an acceptable level of tolerance. And in this case, it wasn't in that tolerance. It was a .01 is what the regulations speak to. So when the ‑‑ we were talking, again, a rational trier of fact. They've heard evidence that both before and after this machine testified exactly on a known quantity. None of the tests or none of the cases cited by the appellant talk about the certification because you can talk in the abstract about a machine having a tolerance or a margin of error, but unless you know how it was tested and where it falls in this margin of error, but the evidence that this jury heard was that there were two tests, both prior to this defendant's test being given and immediately within a day or two after the test being given to the defendant that came back right on the margin, right on the accuracy of the known quantity. And if we're talking about certification, how do we test if something's working right? We have something that we know. Here's what the result of the measurement is, and we're going to see if that machine will register that measurement. And when it did, right on the button, the jury can reasonably assume, a rational jury can assume, that when they heard the results that were taken just a couple days before on the same instrument, which the officer followed all the rules, watched the defendant for 20 minutes to make sure she complied with those regulations, they did a self-check of the instrument, and they heard that an instrument which had tested both before and after exactly accurate, they could reasonably infer and conclude beyond a reasonable doubt that the .082 was a valid test result and would establish that the defendant had a blood alcohol concentration of .08 or more per the statute. And would the margin of error even apply in that situation? I don't think it would. If the test results before and after were accurate? I don't think it would, because the certification test, I think, tells the trial your fact where the instrument falls in whatever margin of error it could be. If the results had been a little higher or a little lower, they could have presumed that the result was not 100% accurate, that maybe it was reading high or it was reading low. But I think when the certification test comes back right on the accurate number, a reasonable jury can say it was tested. We know it took a known quantity, and the result that they knew was this number, and it tested at this number. I don't know how it could be any more accurate. And then I think they could disregard any possibility that the result could have been skewed by a margin of error, because just because the instrument has margin of error doesn't mean it's not going to be measuring accurate. The certification tests are what ensure the accuracy for purposes of admissibility on it. Well, counsel says that two tests are not sufficient. How many tests would be sufficient? He doesn't know. Why it's two not sufficient maybe is the question. I'm not saying it's not. I'm saying that's what the regulations require. And I think when the General Assembly says to the state police, we are delegating to you the authority to determine how we're going to determine blood alcohol level by blood, breath, or urine, you're going to establish those procedures, and that will establish admissibility. If the General Assembly was not happy with those results, didn't think that that was accurate, they certainly could have taken that authority, or they could have mandated that those regs be changed. I think those of us who have been in this business a long time realize that over the years, DUI instruments have gotten more precise and more accurate, and the legislature has changed the blood alcohol level from a 0.15 many years ago to a 0.10 to a 0.08. And I think it takes into account the fact that the ability to quantify and determine blood alcohol level is more accurate now. But I thought it was interesting, I think it was the Keller case that came out of Washington, where they talked about there had been a number of certification tests that were administered on this particular instrument prior to the defendant submitting to a test in that case. And they said, because I believe in that case there was five tests that had been administered on that certification, that the jury was allowed, of course, substantial weight to those results based on the certification test, not based on the margin of error, but the machine itself. That particular machine had been certified and had been certified accurate, and so when a jury hears results which came from that machine, they could give substantial weight to the results of that test. Likewise in this case. There was four certification tests, two before and two after, that came in exactly at the known quantity, and I think the jury was entitled to and probably gave substantial weight to that. And contrary to the argument that there was no evidence to support the 0.08 or more verdict, there clearly was. There was a test, a 0.082, and it was substantiated by the testimony and the evidence that all the procedures were followed, that the machine had been certified before and after, and despite any tolerance which was set forth in the manual for the instrument and not by any expert testimony, that they accepted that result and it's not an irrational verdict and can certainly support the verdict of the guilt beyond a reasonable doubt in this case. Excuse me. If the dry gas canister was marked 0.079 but actually recorded on the test 0.080 and then there was another test with a canister marked 0.79 and that test was accurate, would the jury have to infer that it's within the margin of error but only at 0.001? My math isn't great, especially in my head. Would they have to say, okay, now we have to apply a 0.001 and therefore her blood alcohol was actually 0.081? Do they have to do that? I don't think they have to make the mathematical calculations like that. They have to give that evidence weight, and if that result isn't reading exactly what the known quantity is, may they give it a different weight? May they believe that this result was not 0.081? Again, it's a determination for the jury to make. But then the standard in what you're asked to decide here is whether any reasonable juror or jury could return a verdict based on that evidence, and they give it that weight that they determine. The argument was certainly made by the appellant's counsel at trial about the margin of error. It was very graphically put on an easel and had all the values laid out there. So they were not unmindful of that possibility of the argument there. It was argued very zealously by the defense counsel that this result wasn't accurate, but yet they didn't object to it at any point, not even a token objection just as to foundation. And everything came in. The results came in. The certification results came in. The administrative rules came in. All the officer's certification and his testimony, his certification from the breath operator, the procedures that were followed, it all came in nonobjective, and they relied on the margin of error argument before the jury. And, again, argued very zealously, but the jury rejected the argument. I believe they had a rational basis for coming to the conclusion that the defendant had a blood alcohol level 0.08 or more at the time she was driving. The only thing else I would add is the King case, which I think is really right on point, and it talks about, which has been brought up before, that the fact that there is a tolerance, which is accepted by the legislation of the state police, and it's a tolerance which we are acceptable of, that may create a doubt, but we don't have to remove all doubt and any doubt. So I think in this case the jury was presented with sufficient evidence for which they could render a verdict beyond a reasonable doubt,  Thank you very much, Mr. Williams. Mr. McCoy, you may address the Court in rebuttal. Mr. McCoy, what do you think of my question? Now, it was brilliant, obviously, but what do you think about the answer to my question, that would they have to then assume that her blood alcohol content was 0.081 as opposed to 0.082? I think in that case the state's left in the same position they are here. It's just speculation. There's no data on the percentage of time the actual blood alcohol level is going to be, or the reading is going to be off from the actual blood alcohol level, and the fact that one of the tests would be off, I mean, the jury, again, you're dealing with the same measurement problem and sample size problem that we have in this case. So, again, it comes back to just speculation on the part of the jury as to where the actual BAC falls in the possible ranges that are available in this case. Counsel argued that the out-of-state cases we relied on were distinguishable because the machine here was properly certified. Again, quite frankly, that's just totally irrelevant. The certification doesn't matter because here you still have a margin of error of 0.005. Nothing the police officer could do could make that margin of error less than 0.005. And it doesn't disappear simply because there was two certification checks that came out 0.079. That's not what the manual says. That's not what the evidence is. And why are two tests insufficient? Well, to take an example, if you flip a coin twice and get heads both times, that doesn't mean you can say beyond a reasonable doubt that it's going to come up heads the third time you flip the coin. We just don't have enough evidence in this case to say for the state to reach its verdict. Well, why not? Why can't you say that? Why can't you say the coin? Right. It depends on one's own personal definition of reasonable doubt. Well, here we have. I mean, you're asking again beyond all doubt. I mean, I think you and I have asked the same question now a couple times, I know. But, I mean, I don't. I mean, the jury heard. I don't know. I don't see it the same way here. The jury heard about the tolerance, right? Yes. They had the action of saying, well, you know what? That makes a lot of sense. I mean, how do we know this is accurate? Because there is a tolerance. They could have applied the tolerance. They could have acquitted the defendant. What else can you do in a jury trial? The jury, yes, they can weigh the evidence. But the fact that they hear the evidence doesn't mean that they can do anything they want with it. There are irrational verdicts out there. And whether they didn't believe that the tolerance, it was inaccurate. But there's no evidence to support that finding. No, but the .79, the fact, I mean, I know you say there should be more samples. But the law says that we have to look at the administrative regulations for calibrating the accuracy. This machine says it needs to register when it does its own certification checks .79. I don't know if it's .79, .079. And it did. It did. And that made it admissible. But that doesn't mean you still are dealing, when you're dealing with this close of a borderline case, when it's this close to the limit between guilty and not guilty, and not guilty possibilities are within the margin of error, that's insufficient, both for the sample size problem and the fact is that no one can say that these predetermined canisters were exactly .079 beyond the margin of error. It's just circular reasoning to come back to the fact that this proves that every test was accurate. And why is it not proof beyond all doubt? Well, there's a 27% chance that she's not guilty based on the state's own argument in closing, trial and closing argument. So maybe if the state's burden here was preponderance of evidence, maybe they satisfied that. But not when it is the highest standard of proof that we know, which is proof beyond a reasonable doubt. The jury could not say beyond a reasonable doubt that the blood alcohol concentration was .08 or over. And it's for this reason that Ms. Robledo would ask that her conviction be reversed. But in the case where, I think it's Borson, the actual witness said, well, yeah, within that tolerance, within that margin of error, it could have been less than. We have no evidence like that in this case. Nobody admitted that. I don't know if anybody asked Officer Bondat, but nobody admitted that. I believe that's implicit. He testified that there's a . . . No, in Borson, it wasn't asked. It's not an implicit. He was asked. I don't . . . The witness was asked. I don't see a distinction between those two. If the machine has a margin of error, as the state admits in this court and in the court below, it's possible her BAC was under .08. So the fact that Officer Bond didn't explicitly testify that, it really doesn't matter because he admits the evidence is undisputed. This machine has a tolerance of .05. And it's undisputed. Ms. Robledo's actual blood alcohol level could have been .077. There's never been any factual dispute of that premise. So the fact that Officer Bond didn't say that explicitly in his testimony doesn't . . . Well, argument isn't evidence. We instruct the jurors that argument is not evidence. Evidence comes from the mouth of the witness. And what comes from the mouth of the witness is this says .02. It can be .005 less than that. The only rational, reasonable inference to draw from that testimony is that it could be .077. There's no way to say . . . He says it's explicitly plus or minus .005. So just math, .082 minus .005 equals .077. There's . . . That's the evidence. That's what the jury heard. If the only evidence there is supports . . . helps the defendant, the jury can't just disregard that. They . . . So, again, I don't believe that the lack of that testimony really saves the State in any way here. All right. Thank you, Mr. McCoy. I'd like to thank both counsel for the quality of their argument here this morning. The matter will, of course, be taken under advisement and a written decision will enter in due course. We will stand in brief recess to prepare for the next case. Thank you.